ORR (RATHBONE v.). See Case No. 11,585.

ORR (THORP v.). See Case No. 14,006.

ORTEGA (UNITED STATES v.). See Cases Nos. 15,970 and 15,971.

ORVIS (McDONALD v.). See Case No. 8,764.

## Case No. 10,592.

In re OSAGE VALLEY & S. K. R. CO.

[9 N. B. R. 281;[1] 1 Cent. Law J. 33.]

District Court, W. D. Missouri. 1873.

BANKRUPTCY—SET-OFF AGAINST CREDITOR'S CLAIM.

Where the alleged bankrupt has counter claims against the petitioning creditor of such a nature as are provable in bankruptcy, and the amount so provable will reduce the petitioning creditor's claim below two hundred and fifty dollars, the petition will be dismissed.

[Cited in Re California Pac. R. Co., Case No. 2,315.]

The facts of the case and the nature of the pleadings on which the opinion was pro-

[1] [Reprinted from 9 N. B. R. 281.]

nounced are sufficiently stated therein. (1) In suits and proceeding instituted in, or transferred to, the federal courts, the same defenses, set-offs and counter claims may be interposed as could be if they were brought and tried in the state tribunals. West v. Aurora City, 6 Wall. [73 U. S.] 139; Partridge v. Insurance Co., 15 Wall. [82 U. S.] 573. (2) Petitioner must have a debt, provable under the bankrupt law, of two hundred and fifty dollars after allowing all just credits, set-offs and counter claims. In re Ouimette [Case No. 10,622]; In re Cornwall [Id. 3,250]; Bump, Bank. (6th Ed.) 47, 48. (3) Unliquidated damages are proper subject of counter claim under the laws of the state of Missouri, where the suit is on contract, and the damages also arise from the breach of contract. Hay v. Short, 49 Mo. 139; Gordon v. Bruner, Id. 570; Davidson v. Remington, 12 How. Prac. 310; Gage v. Angell, 8 How. Prac. 335; Lemon v. Trull, 13 How. Prac. 248; Jones v. Moore, 42 Mo. 413.

I. N. Litton and Ewing & Smith, for petitioner.

Johnson & Botsford and McMillan Bros., for debtor.

KREKEL, District Judge. The Pacific Railroad files its petition to have the Osage Valley & Southern Kansas Railroad declared bankrupt, and after setting out formal requirements, alleges that its demand originates in the violations of the conditions of a lease made by the Osage Valley & Southern Kansas Railroad on the 10th day of September, 1868, for thirty years, of its Boonville and Tipton road, to the petitioner; that by a provision of said lease it was to have the use and possession of its Boonville depot and grounds, of which it has been deprived by judgment in favor of an adverse claimant, and had damages and costs to pay; that by another provision of said lease, the Osage Valley & Southern Kansas Railroad was to fence the one-half of said railroad in two, and the whole thereof within five years from the date of the lease, which it failed to do, and for which failure damages are also claimed. The acts of bankruptcy are charged to be the suffering and procuring of its property to be taken on legal process with intent to give a preference, and with intent to defeat and delay the operation of the bankrupt law [of 1867 (14 Stat. 517)]. To this petition the Osage Valley & Southern Kansas Railroad files an answer denying the acts of bankruptcy, and, further, that the Pacific Railroad is a creditor, or has a demand against it. As a defense to the claim of petitioner, the Osage Valley & Southern Kansas Railroad sets up and claims damages growing out of obligations assumed and undertaken on the part of the Pacific Company in the lease aforesaid, and asks that such damages may be allowed as a set-off and counter claim, averring that on a settlement of their demands, the Pacific Railroad will be indebted to the Osage Valley

& Southern Kansas Railroad. The attorneys for the Pacific Railroad file their motion to strike out so much of defendant's answer as refers to unliquidated damages. This motion raises the question: is the claim for unliquidated damages available as a set-off or counter claim? This question must be solved by the provisions of the bankrupt act; for whatever force may be given to the act of congress of June 1st, 1872 [17 Stat. 196], providing for the assimilating of the practice and pleadings of federal courts to that of the state courts, neither that act nor the bankrupt law has done away with the distinction between law and equity, although the bankrupt act, as we shall presently see, seems in some of its enactments to disregard it. Authority for this may be found in the constitutional grant of power to congress "to establish uniform laws on the subject of bankruptcy throughout the United States."

This grant, so far as limitations are concerned, leaves it for the national legislature to enact whatever provisions of law it may deem best to accomplish the constitutional object. The first section of the bankrupt act constitutes the district courts of the United States courts of bankruptcy, and confers on them original jurisdiction in their respective districts in all matters and proceedings in bankruptcy, and they are thereby authorized "to hear and adjudicate upon the same, according to the provisions of this act, providing that the jurisdiction hereby conferred shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy." The jurisdictional grants. however ample, need not come in conflict with the maintaining of the distinction between law and equity; yet when we come to the provisions of the second section of the act, giving the circuit courts of the United States a general superintendence and jurisdiction of all cases and questions arising under it, and providing that they "may, upon bill, petition or other proper process of any party aggrieved. hear and determine the cases as a court of equity," it would appear that congress, by these provisions, sought to meet a peculiar class of cases, having their origin in the bankrupt act, in which law and equity were blended. But the jurisdiction to hear and determine the matters in controversy does not exclusively depend on the construction given to the provision in the sections cited. The last clause of the nineteenth section of the act under consideration, provides that "if any bankrupt shall be liable for unliquidated damages arising out of any contract or promise, * * * the court may cause such damages to be assessed in such a mode as it may deem best; and the sum so assessed may be proven against the estate." Thus it is seen that, by direct provision, unliquidated damages, growing out of any contract or promise, when assessed, are provable debts, and, be-

ing provable debts, under the view of the court, may be set up by way of defense to show that no debt or demand is due to petitioner entitling it to have defendant declared a bankrupt.

It is said that the damages must be assessed before they become a provable debt and, before they can be made available as a counter claim. While this is true, the mode of assessing is left to the court, "as it may deem best." In the settlement of a bankrupt's estate, the court would undoubtedly direct the assessment of unliquidated damages before allowing it to be proven; but this practically amounts to nothing more or less than an inquiry as to the amount. As this court may, by allowing the answer to stand, make this its mode for assessing defendant's damages consistent with the provisions of law, it will not order the defendant out of court with its claims, which, if sustained, may dispose of the case. While this view of the law would allow petitions in bankruptcy to be brought on claims for unliquidated damages growing out of contracts or promises, it must be left for the courts to determine whether they will, in the first instance, deem an assessment by way of inquiry, on creditor's petition, a mode deemed best to assess unliquidated damages. Of this the court entertains serious doubts, and declares itself free to act when a case shall be presented. The question on the motion under consideration is, shall a claim for unliquidated damages be made available as a defense, to show that defendants are not indebted to petitioners, and hence that the latter have no standing in court? Petitioner must have a claim, after all just credits, exceeding the amount of two hundred and fifty dollars, to entitle it to raise the inquiry as to the facts of bankruptcy and solvency of the defendant. That the prima facie case made by the petition, proofs and exhibits upon which the order to show cause issued, may be rebutted, is well settled by the almost daily practice of this court, as well as adjudicated cases.

That part of the motion to strike out defendant's answer covered by this opinion is overruled.